FILED
2019 Apr-29 PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOEANN BESTER and NNEKA GUNN,** ) <br> ) <br> **Plaintiffs,** ) <br> v. ) <br> ) <br> **COMPASS BANK d/b/a BBVA COMPASS,** ) <br> ) <br> **Defendant.** ) | Civil Action Number <br> **2:18-cv-01817-AKK** |

## **MEMORANDUM OPINION**

Joeann Bester and Nneka Gunn bring this putative class action against Compass Bank d/b/a BBVA Compass for alleged violations of the Equal Pay Act and § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. *See* doc. 1. This action is before the court on Compass's motion to strike the class and collective actions claims and to compel arbitration of the plaintiffs' individual claims. Doc. 9. The motion is fully briefed and ripe for review, docs. 9, 12, 13, and is due to be granted solely as to Compass' request to compel arbitration.

## I. STANDARD OF REVIEW

When presented with a motion to compel arbitration, the district court must determine whether the arbitration agreement at issue can be enforced against the parties who oppose arbitration. *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citing

*Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)). The party opposing the motion must present evidence that the arbitration agreement is not valid or does not apply to the dispute in question. *See id.* (quoting *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 819 (11th Cir. 1993)); *Campbell v. CitiFinancial Mortgage Co., Inc.*, No. CV-06-BE-0302-E, 2006 WL 8436895, at *1 (N.D. Ala. June 2, 2006) (citing *Kenworth of Birmingham, Inc. v. Langley,* 828 So. 2d 288, 290 (Ala. 2002)). A "summary judgment-like standard" applies to motions to compel arbitration, and "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material' fact concerning the formation of such an agreement." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). As with a motion for summary judgment, "'conclusory allegations without specific supporting facts have no probative value' for a party" opposing a motion to compel arbitration. *Id.* (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)).

## II. FACTUAL BACKGROUND

Compass hired Bester and Gunn as contract analysts in August 2014 and June 2016, respectively. Docs. 1 at 5; 9-1 at 3; 9-2 at 2. When Bester and Gunn applied for employment, they each signed an application containing an agreement to arbitrate any potential claims "concerning any aspect of [their] employment

2

relationship or termination," and acknowledging that "if [they are] selected for employment . . . , [they] remain obligated to bring any claim concerning [their] application[s] for employment, [their] employment, or termination of [their] employment through the Company Alternative Dispute Resolution Policy." Docs. 9-1 at 3, 9-10; 9-2 at 3, 10.

In addition, Compass maintains a policy called "'CARE: Communications, Answers and Resolution for Employees Policy and Procedures," for resolving disputes with its employees. *See* doc. 9-1 at 3, 12. The CARE Policy provides, among other things, that "an employee's agreement to submit disputes to arbitration is a condition of employment for those hired on or after April 1, 2000," and that "[a]rbitration shall be the final and exclusive forum for the resolution of all employment-related disputes that are covered by the Policy." Doc. 9-1 at 3, 12, 14. After hiring Bester and Gunn, Compass provided them access to its employee handbook, which outlines the CARE Policy and states that the Policy "is a contract." Docs. 9-1 at 4, 27-28; 9-2 at 3, 13. Compass also trained Bester and Gunn about its code of conduct, which provides that "[t]he use of alternative dispute resolution and arbitration to resolve certain employment-related disputes based on a legal claim is an essential element of the employment relationship, and your agreement to submit disputes based on a legal claim to arbitration is a

3

condition of employment for those hired on or after April 1, 2000." Docs. 9-1 at 3-4, 32, 35; 9-2 at 3, 13.

According to Bester and Gunn, Compass' pay, performance evaluation, and promotion practices disadvantage African-American and female employees by among other things, paying them significantly less than their Caucasian and male counterparts. Doc. 1 at 8-10, 23-25. Bester and Gunn, who allege that Compass has passed them over for promotions, assert EPA and § 1981 claims individually and on behalf of a class of female, African-American employees. *Id.* at 10-11, 23-30.

## III. ANALYSIS

Compass moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Doc. 9. The FAA establishes that arbitration agreements contained in contracts involving interstate commerce are enforceable, 9 U.S.C. § 2, and "embodies a 'liberal federal policy favoring arbitration agreements,'" *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement had been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis

4

in original). In addition, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Although federal policy favors arbitration agreements, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit," *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960), and "[t]he threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract,'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). To determine whether parties agreed to arbitrate a dispute, courts must consider (1) whether a valid written agreement to arbitrate exists and (2) whether the agreement encompasses the dispute. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). Finally, federal courts generally apply state contract law to this determination. *First Options of Chicago*, 514 U.S. at 944.

  A. <u>Whether a valid arbitration agreement exists that encompasses this action</u>

Compass argues that the arbitration agreement is a valid contract that evidences a transaction involving interstate commerce, and that the plaintiffs' claims are subject to arbitration. Doc. 9 at 6-12. To support that argument, Compass provides evidence that Bester and Gunn each signed an arbitration agreement when they applied for employment; that Compass maintains the CARE

5

Policy for employee disputes, which includes an arbitration agreement; and that Bester and Gunn signed forms acknowledging that the CARE Policy is a contract. *See* docs. 9-1; 9-2. In light of that evidence, which Bester and Gunn do not dispute, a valid arbitration agreement exists between the parties. *See Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (2009) ("The elements of a valid contract include: 'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'") (quoting *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997)); *Baptist Health System, Inc. v. Mack*, 860 So. 2d 1265, 1268, 1274 (Ala. 2003) (finding that an employee is bound by the terms of a written arbitration policy when the employee signed an acknowledgment that he received the policy and assented to its term through continued employment). In addition, the CARE Policy provides that "both Compass and the employee agree to arbitrate all claims that arise or involve a claim under any federal . . . statute . . . regarding or relating to matters of employment, [or] employment discrimination . . . including, but not limited to . . . the Civil Rights Act of 1866 and all applicable amendments . . . ." Doc. 9-1 at 14. Based on that language, the plaintiffs' § 1981 and EPA claims fall squarely within the scope of the arbitration agreement—a contention that Bester and Gunn do not dispute, *see* doc. 12.

B. Whether Compass can enforce the arbitration agreement

Bester and Gunn argue that the court should not allow Compass to enforce the arbitration agreement they signed because Compass discriminatorily enforces the agreement. Allegedly, Compass does not enforce the agreement against Caucasian or male employees, which the plaintiffs contend is unconstitutional and a violation of § 1981. Doc. 12 at 1-5. The plaintiffs also contend that Compass' policy of exempting employees hired before April 1, 2000 from the obligation to arbitrate could be discriminatory. *Id.* at 6-7. Finally, the plaintiffs argue that Compass fraudulently induced them to enter the agreement. *Id.* at 7-9. The court addresses these arguments in turn.

1. Alleged discriminatory enforcement

The plaintiffs have not cited any authority for the proposition that a party may waive its right to arbitrate by allegedly enforcing an arbitration agreement in a discriminatory manner, and the court has found no such authority. Moreover, the Eleventh Circuit recently found that a bank did not waive its right to arbitrate by seeking to enforce an arbitration agreement against some customers, while litigating the claims of other customers. *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1237-39 (11th Cir. 2018) (reversing a district court order denying the bank's motion to compel arbitration with respect to the unnamed plaintiffs in a class action, and holding that the bank did not waive its right to arbitrate the claims

of those unnamed plaintiffs by litigating claims brought by the named plaintiffs). Based on the court's analysis in *Gutierrez*, Compass' alleged discriminatory enforcement of the arbitration agreement does not render the agreement unenforceable. Rather, the plaintiffs must raise the alleged discriminatory enforcement in arbitration with their other claims.

### 2. Alleged discriminatory pre-April 1, 2000 exemption

Bester and Gunn's contention that Compass' exemption of employees hired before April 1, 2000 from the obligation to arbitrate may have a discriminatory impact is rank speculation and not supported by any facts. *See* doc. 12 at 6-7. In addition, the plaintiffs have not cited any authority for the proposition that an otherwise neutral arbitration agreement may be unenforceable if it has a discriminatory impact. *See id.* Accordingly, the plaintiffs' contentions that Compass's arbitration policy may have a discriminatory impact are not sufficient to meet their burden of proving that Compass cannot enforce the arbitration agreement. *See Gutierrez*, 889 F.3d at 1235-36 ("'[B]ecause federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof.'").

### 3. Alleged fraudulent inducement

Fraud in the inducement may render an arbitration agreement unenforceable. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) ("Like other

8

contract, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'") (quotation omitted). The court can decide the plaintiffs' fraudulent inducement argument to the extent they argue that the fraud involves the making of the agreement to arbitrate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). "But the statutory language [of the FAA] does not permit the [] court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404. Here, Bester and Gunn argue that they accepted employment with Compass based on the alleged misrepresentations "that Compass was an equal opportunity employer and all disputes for post April 1, 2000 hires would be resolved through the CARE [Policy] requiring binding arbitration." Doc. 12 at 9. This contention that Compass fraudulently induced the plaintiffs based on the alleged representation that Compass is an equal opportunity employer involves the employment contract generally, rather than the agreement to arbitrate itself. Therefore, the court cannot consider this contention in ruling on the motion to compel. *See Prima Pain Corp.*, 388 U.S. at 404. In addition, even assuming that the CARE Policy's statement that "[a]rbitration is mandatory for all persons employed by Compass with an employment date of April 1, 2000 or later" is false, *see* doc. 9-1 at 24, Bester and Gunn have not presented any evidence that they acted in reliance on that misrepresentation, or that they incurred damages as a

result. *See* doc. 12. Consequently, Bester and Gunn have not established that Compass fraudulently induced them to enter into the arbitration agreement, or that Compass cannot enforce the agreement against them. *See Kidder v. AmSouth Bank, N.A.*, 639 So. 2d 1361, 1362 (Ala. 1994) (noting that the "elements of actionable fraud based on a misrepresentation" include "action upon the false representation by the plaintiff and [] loss, harm, or damage proximately resulting from the false representation").

For all these reasons, the motion to enforce the arbitration agreement is due to be granted.

C. <u>Whether the court should strike Bester and Gunn's class claims</u>

Compass also argues that the court should strike Bester and Gunn's class claims and compel arbitration only on their individual claims. Doc. 9 at 12-13. The CARE Policy provides in pertinent part as follows:

> Neither the employee nor Compass will have the right to participate as a class representative or member of any class of claimants for any claim that is subject to arbitration under this Policy. A claim by, or on behalf of, other persons will not be considered in, joined with, or consolidated with . . . and a claim shall not be arbitrated on a class action . . . or other representative basis. Any dispute regarding the prohibitions in the prior sentence shall be resolved by the arbitrator(s)
> . . . .

Doc. 9-1 at 16. Compass asserts that the CARE Policy is clear that employees cannot pursue class and collective claims in arbitration. Docs. 9 at 12-13; 13 at 5-6. While that may be true, the CARE Policy also explicitly states that any dispute

10

regarding this particular issue shall be resolved by the arbitrator. Doc. 9-1 at 16. As such, this is an issue, as Bester and Gunn note, *see* doc. 12 at 9-10, for the arbitrator to decide. Therefore, the court declines to strike the plaintiffs' class and collective claims. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) ("The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'") (quotation and alteration omitted).

## IV. CONCLUSION

Based on the foregoing, Compass' motion to compel arbitration is due to be granted, and its motion to strike plaintiffs' class and collective claims is due to be denied. The court will enter a separate order directing the parties to arbitration.

**DONE** the 29th day of April, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE